# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 34 | **DATE** | 4/26/2000 |
| **CASE TITLE** | Dwayne B. Davis vs. Cash for Payday, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 5/17/2000 at 9:45 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendants' motion to dismiss Counts I through III [10-1] is denied. Plaintiff's motion for class certification [15-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | APR 27 2000 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 21 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DWAYNE B. DAVIS, ) | |
| ) | |
| Plaintiff, ) | No. 00 C 34 |
| ) | |
| v. ) | Judge Ruben Castillo |
| ) | |
| CASH FOR PAYDAY, INC., IVAR J. RANVIK, ) | |
| and JOHN DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
APR 27 2000

## MEMORANDUM OPINION AND ORDER

Dwayne B. Davis sued Cash For Payday, Inc. ("CFP"), Ivar J. Ranvik, and John Does 1-10, on behalf of a putative class for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226, and the state law claims of unconscionability and violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/2. Currently before the Court are Davis' motion for class certification, (R. 15), and the defendants' motion to dismiss, (R. 10). For the reasons stated below, we grant the motion for class certification and deny the motion to dismiss.

### RELEVANT FACTS[1]

Davis obtained a loan from CFP, a company that makes high-interest consumer "payday loans," by signing a "Consumer Loan Agreement," which disclosed an interest rate of more than 600%. (R. 14, Pl.'s Resp. to Mot. to Dismiss, Ex. A.) Although payday loans are for two-week periods, debtors usually renew the loans. To facilitate repayment of the loan, CFP requires the

---

[1] The facts articulated in this opinion are taken from Davis' complaint and are accepted as true for purposes of this motion to dismiss. *Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977).

debtor to issue a post-dated check when the loan is made. If the loan is not repaid, the lender presents the check for payment; if the check is not paid, the lender threatens or attempts to enforce the bad check statutes against the borrower.

In this putative class action, Davis alleges the following: Count I, CFP failed to comply with the disclosure requirements of TILA and implementing Regulation Z; Count II, CFP's loans are unconscionable; and Count III, the defendants violated the ICFA. For purposes of Count I, Davis seeks to certify a class consisting of all persons who signed the Consumer Loan Agreement. For Count II, Davis seeks certification of a class consisting of all persons who obtained CFP loans with an annual percentage rate of greater than 300% on or after January 4, 1995. Finally, for Count III, Davis seeks to certify a class of all persons who obtained CFP loans with an annual percentage rate of greater than 300% on or after January 4, 1997. The defendants oppose the motion for class certification and have moved to dismiss the complaint.

## I. DAVIS' MOTION FOR CLASS CERTIFICATION

Davis requests an order determining that this case proceed as a class action. Plaintiffs seeking class certification bear the burden of proving the action satisfies the requirements for a class action. First, the action must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Second, the proposed class must satisfy at least one of the three provisions under Rule 23(b). Davis seeks certification under Rule 23(b)(3), which requires a plaintiff to demonstrate that common questions of law or fact predominate over individual ones and that a class action is a superior method of adjudicating the controversy.

The defendants argue that Davis has not met the Rule 23 requirements. Specifically, while they do not dispute the numerosity requirement, the defendants argue that Davis has not satisfied the commonality, typicality, or adequacy of representation requirements. Furthermore, the defendants argue that individual questions of law and fact, rather than questions common to the class, predominate over this action and that a class action is not superior to other available methods of adjudicating the controversy.

A. **Rule 23(a)**

1. **Numerosity**

The defendants do not dispute that the numerosity requirement has been met, and we are satisfied that the putative class is sufficiently numerous to support class certification.

2. **Commonality and Typicality**

Rule 23(a)(2) requires that, in order to sustain a class certification, questions of law or fact common to the class be present. A "common nucleus of operative fact" generally satisfies this second requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The fact that some factual variation exists between the class members' claims will not preclude certification. *Id.* at 1017. A common nucleus of operative fact is usually found where the defendant has engaged in some standardized conduct toward the proposed class members. *Franklin v. City of Chicago*, 102 F.R.D. 944, 949-950 (N.D. Ill. 1984).

The defendants assert that, because the plaintiffs' claims are subject to other defenses and counterclaims, individual treatment is required. Furthermore, the defendants argue that the Seventh Circuit has rejected the concept of substantive unconscionability, which concerns whether contract terms themselves are commercially reasonable, and only procedural unconscionability,

which targets impropriety during the process of contract formation, remains a valid cause of action. As such, the defendants argue, individual inquiries would have to be made regarding "gross disparity and bargaining positions of the parties together with terms unreasonably favorable to the stronger party." (R. 16, Defs.' Resp. to Class Certification at 8-9 (quoting *Reuben H. Donnelley Corp. v. Krasny Supply Co., Inc.*, 592 N.E.2d 8, 12 (Ill. App. Ct. 1991).) The defendants, however, concede that if Illinois courts, in fact, do recognize the substantive unconscionability cause of action, "individual inquiries would not be necessary."[2] (*Id.* at 8.)

To begin with, we disagree with the defendants' contention that the class cannot be certified because of potential counterclaims. Potential counterclaims do not defeat class certification. *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164-5 (7th Cir. 1974); *Johnson v. Aronson Furniture Co.*, No. 96 C 117, 1998 WL 641342, *6 (N.D. Ill. Sept. 11, 1998) (individual counterclaims do not render a case unsuitable for class certification).

In addition, the defendants mistakenly rely on *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273 (7th Cir. 1992) and *Donnelley* to support their contention that substantive unconscionability is not recognized under Illinois law. Those cases addressed procedural unconscionability and limited their discussions to whether the contract

---

[2] The defendants also argue that the plaintiffs cannot satisfy the commonality requirement because a number of issues, including a determination of actual damages, requiring a showing of proximate cause, need to be resolved individually. The parties disagree as to which, if any, TILA provision has been violated. The defendants assert that Davis is pleading a violation of § 1638(b)(1) which requires TILA disclosures to be "conspicuously segregated from all other [loan disclosures]." Such a violation requires a plaintiff to show actual damages. Davis, on the other hand, argues that he is alleging a violation of § 1638(a)(9), which provides for statutory damages for failing to disclose a security interest. As explained further below, we agree with Davis and find that he has adequately alleged a § 1638(a)(9) violation. Consequently, an individual determination of damages is not required.

4

negotiation process was defective and whether there was overreaching by one of the parties. *Original Great Am.*, 970 F.2d at 281; *Donnelley*, 592 N.E.2d at 11. Neither case addressed substantive unconscionability, let alone held that cause of action invalid.

We find that substantive unconscionability is a recognized cause of action under Illinois state law. Furthermore, in this case, the substantive unconscionability claim rests on factual and legal questions common to all putative class members. *Reed v. Chartwell Fin. Servs., Ltd.*, Nos. 98 C 6965 & 98 C 6966, 1999 WL 181986, at *3 (N.D. Ill. Mar. 24, 1999) (holding that plaintiff could establish that loan contracts are unconscionable regardless of the unique circumstances of the individual class members); *see Pinkett v. Moolah Loan Co.*, No. 99C2700, 1999 WL 1080596 (N.D. Ill. Nov. 2, 1999) (certifying plaintiff class for, *inter alia*, state law claim of unconscionability in action against payday lender).

The defendants merge their typicality argument with their challenge to commonality arguments and do not raise any separate arguments specifically challenging typicality. We acknowledge that the issue of typicality is closely related to that of commonality. *Rosario*, 963 F.2d at 1018. A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quotations omitted). Typicality may be found even where "there are factual distinctions between the claims of the named plaintiffs and those of the other class members." *Id.* "Claims arising out of form contracts are particularly appropriate for class action treatment." *Demitropoulos v. Bank One Milwaukee*, 915 F. Supp. 1399, 1418 (N.D. Ill. 1996); *Cobb v. Monarch Fin. Corp.*, 913 F. Supp. 1164, 1171 (N.D. Ill. 1995). We agree with Davis that his

5

claims are typical of the putative class because each of the putative class members received the same type of payday loan from the defendants, each received the same Consumer Loan Agreement, and the defendants' conduct, which gave rise to Davis' claims, was similar to their conduct toward all putative class members. Therefore, Davis has met the Rule 23(a)(3) typicality requirement.

### 3. Adequacy of Representation

Finally, Rule 23(a)(4) requires that the named plaintiff be an adequate representative of the class and mandates three elements for the adequacy of representation:

> (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified and generally able to conduct the proposed litigation vigorously.

*Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D. Ill. 1995) (quotations omitted). The defendants argue that Davis has not established that he will fairly and adequately protect the interests of the class. Specifically, they argue, without any case support, that Davis has failed to establish that he was a "necessitous borrower" who had limited access to loans. (R. 16, Defs.' Resp. to Class Certification at 10.) Because the defendants have failed to offer any evidence that Davis would not adequately represent the class, and because we have found no independent reason to doubt his ability to represent the class, we find that Davis has satisfied Rule 23(a)(4).

## B. Rule 23(b)(3)

Davis requests class certification under Rule 23(b)(3), claiming that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In challenging Davis' ability to meet the predominance requirement, the defendants recycle their argument regarding lack of commonality, *i.e.* there are numerous individual questions of fact which predominate over common ones. In addition, the defendants argue that class certification is not superior to other available methods of litigation.

We are satisfied that common issues predominate over individual issues in this case. As will be explained further below, Davis is alleging a violation of § 1638(a)(9), which allows for the recovery of statutory damages. As such, contrary to the defendants' assertion, proving individual questions regarding proximate cause and damages will not be required. Furthermore, we are satisfied that common questions of law or fact predominate over individual ones.

In addition, we find that a class action is the superior method for adjudicating this matter. Courts may consider a number of factors in determining whether a class action is the superior method of adjudication, including "the interest of individual members in individually controlling the litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Demitropoulos*, 915 F. Supp. at 1419.

In this case, we find that a class action is the superior means of litigation because:

> (1) the number of possible litigants is not unmanageable; (2) it is probable that most members of the proposed class are unaware of their rights under TILA and/or ICFA; thus, it is unlikely that

7

> individuals will file suit to protect their rights; (3) the amount of
> damages to each individual is relatively small making it cost
> prohibitive for individuals to initiate individual suits to protect their
> rights; and (4) efficiency favors one litigation rather than forcing
> individuals to litigate their own claims.

*Cox v. Joe Rizza Ford, Inc.*, No. 94 C 5688, 1996 WL 65994, at *11 (N.D. Ill. Feb. 9, 1996) (quoted in *Pinkett*, 1999 WL 1080596, at *7). Therefore, for the reasons stated above, Davis' motion for class certification is granted. (R. 15.)

## II. MOTION TO DISMISS

### A. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim for which relief may be granted. *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995). In ruling on a motion to dismiss, the court must presume all of the well-pleaded allegations in the complaint are true. *Miree*, 433 U.S. at 27 n.2. We also presume "that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Dismissal under Rule 12(b)(6) is proper only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996).

### B. Violation of TILA and Regulation Z

#### 1. Disclosure Requirement

Davis alleges that CFP violated TILA and Regulation Z by not properly disclosing, in the Consumer Loan Agreement, a security interest it took in his post-dated check. TILA and

8

Regulation Z require, *inter alia*, disclosure of any security interest that the lender takes in order to allow consumers to readily compare the cost of credit. 15 U.S.C. § 1638(a)(9); 12 C.F.R. § 226.18(m). Section 1638(a)(9) specifically requires, "[w]here the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type." Moreover, the security interest disclosure must be "conspicuously segregated from all other terms, data, or information." 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(a)(1). This segregation requirement is normally satisfied by surrounding the federally-required disclosures with a prominent border to create a "federal box" containing no extraneous material. *Clay v. Johnson*, 22 F. Supp.2d 832, 840-41 (N.D. Ill. 1998).

CFP relies heavily on *Smith v. Cash Store Management*, 195 F.3d 325 (7th Cir. 1999), in arguing that it did not violate TILA's security interest disclosure requirement. In *Smith*, the plaintiff sued Cash Store, a payday lender, alleging that the loan agreement disclosure, "Your post-dated check is security for this loan," violated TILA. The plaintiff relied on TILA's prohibition of overinclusive security interest disclosures and argued that, because its post-dated check did not give Cash Store a security interest, Cash Store's loan agreement statement to that effect was improper.[3] *Id.* at 328. Cash Store countered that the check acted as "security" because "it [gave] Cash Store alternate routes to collect its debt," and, therefore, its disclosure did not violate TILA. *Id.* at 329. The *Smith* court explained that merely because the check may

---

[3] The *Smith* court explained that overinclusive disclosures were prohibited because they "might deter a borrower's future borrowing or property acquisition out of an exaggerated belief in the security interest to which they would be subject, or give a lender an apparent right which, even if ultimately unenforceable, could serve as a significant bargaining lever in any future negotiations concerning rights or obligations under the loan." *Id.* at 328 (quotations omitted).

9

qualify as "security," it does not also qualify as a "security interest," which could properly be disclosed on the loan agreement. Looking beyond the defendant, Cash Store's, labeling of the check as "security," the court focused on the economic substance of the check. In doing so, the court considered "not simply whether the post-dated check makes repayment more likely ('security') but whether it [could] meet the statutory requirements of 'collateral' ('security interest')" and explained that "collateral must have some value beyond the promise to pay contained in a loan agreement itself." *Id.* at 330. Ultimately, the court determined that the check, indeed, qualified as collateral and, consequently, as a security interest.

CFP, relying on the distinction between "security" and "security interest" discussed in *Smith*, argues that the post-dated checks in this case merely "secured" the loan and thus did not need to be disclosed as a security interest. CFP cites language from *Smith* to buttress its argument:

> This is not to say that by putting up a check as collateral, a lender like Cash Store necessarily takes a security interest in the amount printed on the face of the instrument. Rather, the rights created by state commercial law can, and in this case do, create some value in the instrument. We are therefore satisfied that Cash Store could lawfully assert under TILA that Smith's post-dated check was security for the loan.

*Id.* at 331. CFP misinterprets *Smith*. The court's statement that "Smith's post-dated check was security for the loan" does not mean that the check was not a security interest. *Id.* Rather, the Seventh Circuit was explaining that the specific terminology the defendant chose to use in its loan agreements, *i.e.* "Your post-dated check is security for this loan," was not in violation of TILA. Indeed, had the check qualified as a security but not as a security interest, the defendants' disclosure would have violated TILA as being an overinclusive security interest disclosure. The

court, however, clearly decided that there was no TILA violation and dismissed the plaintiff's security interest claim.[4] *Id.* at 331.

After *Smith*, the Seventh Circuit decided *Hahn v. McKenzie Check Advance of Ill.*, 202 F.3d 998 (7th Cir. 2000), which dealt with facts very similar to *Smith*. The lower court in *Hahn*, affirmed by the Seventh Circuit, found that "nothing in Illinois law . . . prevents a party from taking a security interest in a post-dated check." *Hahn v. McKenzie Check Advance of Ill.*, 61 F. Supp.2d 813, 816 (C.D. Ill. 1999). The district court explained that a "post-dated check provides additional rights apart from the promissory note, and is more than just an additional promise by the consumer to pay back the loan. Therefore, the Court finds that Defendants can receive a security interest in a post-dated check." *Id.* The court found "that the phrase 'Your check is security for this loan' creates a valid *security interest* in the negotiable, post-dated check, and therefore, is a truthful TILA disclosure as a matter of law." *Id.* (emphasis added). Importantly, the Seventh Circuit explicitly relied on *Smith* in affirming the district court in *Hahn*. Therefore, CFP's assertion that *Smith* held that a post-dated check is not a security interest is incorrect. If CFP's interpretation were valid, we have no doubt that the Seventh Circuit in *Hahn*, instead of affirming the district court's opinion, would have taken the opportunity to clarify (or reverse) the lower court's finding that a post-dated check constitutes a security interest.

In addition, several of our sister courts in the Northern District of Illinois, post-*Smith*, have determined that a post-dated check can constitute a security interest and must be disclosed

---

[4] CFP also relies on the concurrence in *Smith* to argue that disclosure of a security interest in the check is not required. While the *Smith* concurrence stated that the defendant-lender was not obligated under TILA to disclose that it held the post-dated check as security, the concurrence is not the opinion of the court.

11

under TILA. *Mitchem v. American Loan Co.*, 99 C 1868, 2000 WL 290276, at *3 (N.D. Ill. Mar. 17, 2000) (Coar, J.) (relying on *Smith* holding that "a creditor can have a security interest in a post-dated check and, thus, must disclose that interest as required under TILA"); *Mitchem v. GFG Loan Co.*, No. 99 C 1866, 2000 WL 294119 (N.D. Ill. Mar. 17, 2000) (Pallmeyer, J.) (Section 1638(a)(9) requires disclosure of post-dated check as security interest); *Pinkett v. Moolah Loan Co.*, No. 99 C 2700, 1999 WL 1080596 (N.D. Ill. Nov. 2, 1999) (Hibbler, J.) (same).

Finally, CFP cites *Burgin v. Great Am. Cash Advance*, No. 00 C 96 (N.D. Ill. April 6, 2000) (attached to R. 17, Defs.' Reply, Ex. A) (minute order granting Defendants' motion to dismiss, *inter alia*, TILA claim) to argue that it did not have a security interest in the check and, thus, no disclosure was necessary. We acknowledge that the *Burgin* minute order holds that a post-dated check, as security, does not need to be disclosed. That minute order, however, does not control the instant case. We first note that the order has limited precedential value. In addition, in *Burgin*, the payday lender identified the check explicitly as "security," while such disclosure is absent from the Consumer Loan Agreement at issue in the instant case. Although CFP points to language on the Consumer Loan Agreement to argue that it has disclosed that the check "secures" the loan,[5] (R. 17, Defs.' Reply at 3), we doubt whether that language, devoid of

---

[5] METHOD OF PAYMENT: Your personal check in the amount of the Total of Payments stated in the Disclosure Statement and dated as of the date indicated in the Payment Schedule stated in the Disclosure Statement (the "Payment Date") will be held by us until the Payment Date. You agree that we may deposit this check on the Payment Date as your payment made pursuant to your Payment Schedule, if you have not paid us in cash or by cashier's check, money order or other immediately available funds the amount of the Total of Payments before noon on the Payment Date. If payment is made prior to the deposit of your personal check, we will return the check to you at the time we receive such payment.

12

the words "security" or "secure," or any derivative thereof, serves to notify a potential borrower that the check secures the loan. In any case, to the extent that *Burgin* conflicts with our interpretation of *Smith* and *Hahn* and the district court opinions cited above, we respectfully decline to follow it. Because a creditor can have a security interest in a post-dated check, and an overbroad disclosure of a security interest can violate TILA, Davis has adequately alleged a violation of TILA to survive a motion to dismiss.

### 2. Actual v. Statutory Damages

CFP argues that Davis' TILA claim must be dismissed for failure to allege actual damages because his allegations constitute a violation of TILA's conspicuousness requirement, for which statutory damages are unavailable. 15 U.S.C. § 1638(b)(1). Davis counters that he is alleging a § 1638(a)(9) violation, which does allow recovery of statutory damages for failure to disclose a security interest in the post-dated check. As explained above, we find that Davis properly alleged that the defendants failed to disclose the security interest in the check, *i.e.* a violation of Section 1638(a)(9). Because a plaintiff can recover statutory damages under Section 1638(a)(9), we reject CFP's argument that Davis must plead actual damages. Consequently, we deny the defendants' motion to dismiss Davis' TILA claim.

### C. Supplemental Jurisdiction: Unconscionability and ICFA Claims

The defendants argue that Davis' state law claims raise novel issues of law and that we should not exercise supplemental jurisdiction over them. The defendants cite two unpublished orders in support of their argument: *Jackson v. Sun Cash*, No. 99 C 2118 (N.D. Ill. June 23, 1999) (attached to R. 14, Pl.'s Resp., Ex. C) (order entering judgment on liability on the federal claims and relinquishing supplemental jurisdiction over state law claims) and *Gutierrez v. Devon*

13

*Fin. Servs., Inc.*, No. 99 C 2647 (N.D. Ill. Sept. 29, 1999) (attached to R. 10, Defs.' Mot. to Dismiss) (order dismissing unconscionability and ICFA claims because a state court is better suited to decide them). These cases are not dispositive of the instant case. The *Jackson* court declined supplemental jurisdiction over the state claims *after* judgment was entered on the federal claims. Although we recognize that the *Gutierrez* court declined supplemental jurisdiction over the same state law claims before us, other courts, exercising their discretion under § 1367(c), have chosen to retain jurisdiction over the same state law claims. *American Loan Co.*, 2000 WL 290276 (denying motion to dismiss TILA claims and retaining jurisdiction over unconscionability and ICFA claims); *Sharp v. Chartwell Fin. Servs. Ltd.*, No. 99 C 3828, 2000 WL 283095 (N.D. Ill. Mar. 6, 2000) (denying motion to dismiss, *inter alia*, unconscionability and ICFA claims); *Williams v. Ford Motor Co.*, No. 97 C 162, 2000 WL 263706 (N.D. Ill. Feb. 28, 2000) (retaining supplemental jurisdiction over ICFA claim); *Pinkett*, 1999 WL 1080596 (exercising supplemental jurisdiction over plaintiff's unconscionability and ICFA claims over Defendant's argument, *inter alia*, that those state claims raised novel issues); *Cobb v. Monarch Fin. Corp.*, No. 95 C 1007, 1996 WL 308279 (N.D. Ill. June 6, 1996) (denying Defendants' motion to decline supplemental jurisdiction over ICFA claim). Thus, because we have not dismissed the federal TILA claim, we exercise our discretion and retain jurisdiction over Davis' unconscionability and ICFA claims.

## CONCLUSION

For these reasons, we grant Davis' motion for class certification, (R. 15-1), and deny the defendants' motion to dismiss. (R. 10-1.) A status hearing will be held on May 17, 2000 at 9:45 a.m. to discuss: (1) remaining settlement possibilities for this case; (2) the appropriate notice to be given the class; and (3) an appropriate litigation schedule for this lawsuit in the event it is not settled.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: April 26, 2000

15